# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30146

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MATTHAIOS FAFALIOS,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY and JONES, Circuit Judges, and MILLS,* District Judge.

E. GRADY JOLLY, Circuit Judge:

Matthaios Fafalios appeals his conviction for failing to maintain an oil record book aboard a foreign-flagged merchant sea vessel, in violation of 33 U.S.C. § 1908(a) and 33 C.F.R. § 151.25. Fafalios moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. For the following reasons, we reverse the district court's denial of Fafalios's Rule 29 motion. We vacate the judgment of conviction, and remand this action for entry of a judgment of acquittal.

---

* District Judge of the Northern District of Mississippi, sitting by designation.

No. 15-30146

## I.

Fafalios is a 65-year-old Greek citizen who has been a merchant seafarer for over forty years.  Most recently, Fafalios was the chief engineer on the *M/V Trident Navigator*, a merchant cargo ship registered under the flag of the Marshall Islands.  Like many large cargo ships, the *Trident Navigator* gradually collects water in the base of the ship, which is referred to as the "bilge."  Bilge water must be dumped periodically to prevent it from overtaking the engine rooms and other on-board machinery.  Because bilge water often mixes with oil runoff from the ship's engine room, various international treaties require that the water be filtered before it is returned to the sea.  Under the implementing federal statute, the Act to Prevent Pollution from Ships (APPS), and its accompanying regulations, all discharges of bilge water are to be documented in an "oil record book." *See* 33 U.S.C. § 1908(a); 33 C.F.R. § 151.25(a).  As chief engineer, Fafalios was responsible for making record book entries regarding the dumping of bilge water.

In December 2013, while in international waters, Fafalios noticed that the *Trident Navigator*'s bilge tank was almost full.  Fearing that the bilge water would damage engine components before it could be properly filtered for disposal, Fafalios ordered that the oily bilge water be pumped directly into the ocean without treatment.  To conceal his actions, Fafalios did not record this bilge water dumping in the *Trident Navigator*'s oil record book.  Several weeks later, the *Trident Navigator* arrived at port in New Orleans.  Soon after the ship's arrival, a whistleblower contacted the U.S. Coast Guard and informed them that the untreated bilge water had been pumped overboard.  The Coast Guard conducted an investigation, which uncovered Fafalios's actions.

The government indicted Fafalios for failing to maintain an oil record book, in violation of 33 U.S.C. § 1908(a); obstruction of justice under 18 U.S.C. § 1505; and witness tampering under 18 U.S.C. § 1512(b)(3).  Fafalios's case

No. 15-30146

went to trial in December 2014.  Before the case was submitted to the jury, Fafalios moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  Fafalios's Rule 29 motion concerned only the charge for failing to maintain an oil record book in violation of 33 U.S.C. § 1908(a). Fafalios urged that the government had failed to prove that he was the "master" of the ship, which, according to Fafalios, is an element of the offense. The district court reserved ruling on this motion until a later time.

The jury convicted on all three charges on December 16, 2014.  Fafalios renewed his Rule 29 motion. The district court denied the motion.  Fafalios appealed to this court, and challenges only his conviction under 33 U.S.C. § 1908(a) for failure to maintain an oil record book.

## II.

Fafalios's Rule 29 motion asserted that the government failed to offer evidence regarding an element of the statute of conviction.[1]  This court reviews de novo a district court's denial of a motion for a judgment of acquittal, and views the evidence in the light most favorable to the government.  *United States v. Dickinson*, 632 F.3d 186, 188–89 (5th Cir. 2011).

## III.

As stated, Fafalios appeals only his conviction under 33 U.S.C. §1908(a) for "failure to maintain a record book."  Section 1908(a) states that "[a] person who knowingly violates [international treaty provisions], this chapter, or the regulations issued thereunder commits a class D felony."  Foreign-flagged

---

[1] In characterizing Fafalios's appeal as a challenge to the sufficiency of the evidence, we reject the government's contention that Fafalios's Rule 29 motion was actually an untimely attack on the indictment, and thus should be reviewed for plain error.  Fafalios does not contend that the indictment categorically fails to state an offense, but instead that the government failed to prove the elements of the offense alleged.  That Fafalios knew at the time the indictment was served that the government would likely be unable to prove its case does not convert his Rule 29 motion into an untimely attack on the indictment.

ships may be prosecuted under 33 U.S.C. § 1908 only for violations that occur within the navigable waters of the United States, or while at a port or terminal under the jurisdiction of the United States.  33 U.S.C. § 1902(a); *see also United States v. Jho*, 534 F.3d 398, 403 (5th Cir. 2008).

Because Fafalios dumped the dirty bilge water while the *Trident Navigator* was still in international waters, that action, although a violation of international law, did not allow for prosecution under APPS.  Thus, the government relied on the statute's accompanying regulations to prosecute Fafalios for failure to maintain an accurate oil record book once the ship entered U.S. waters.  *See* 33 U.S.C. § 1908(a) (stating that an individual who "knowingly violates . . . the regulations issued thereunder commits a class D felony").  The regulations, which are promulgated by the Coast Guard, state in relevant part that:

> [e]ach . . . ship of 400 gross tons and above . . . shall maintain an Oil Record Book . . . . Entries shall be made in the Oil Record Book on each occasion [that bilge water is discharged]. . . . Each operation . . . shall be fully recorded without delay in the Oil Record Book so that all the entries in the book appropriate to that operation are completed. Each completed operation shall be signed by the person or persons in charge of the operations concerned and each completed page shall be signed by the master or other person having charge of the ship. . . .  The master or other person having charge of a ship required to keep an Oil Record Book shall be responsible for the maintenance of such record.

33 C.F.R. §§ 151.25(a), (e), (h), (j).

Fafalios contends that, under the plain language of the regulations, only the "master or other person having charge of [the] ship" is responsible for the continued maintenance of the oil record book.  According to Fafalios, the government's failure to offer any evidence showing that he was the "master" of the *Trident Navigator* means that the government failed to prove an element of the charged offense.

4

No. 15-30146

This court interprets regulations in the same manner as statutes, looking first to the regulation's plain language. *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 787 (5th Cir. 2000). "Where the language is unambiguous, we do not look beyond the plain wording of the regulation to determine meaning." *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008) (citing *Copeland v. Comm'r*, 290 F.3d 326, 332–33 (5th Cir. 2002)); *see also S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 595 (5th Cir. 2004) ("We have consistently held that a regulation should be construed to give effect to the natural and plain meaning of its words."). Furthermore, the court "consider[s] the regulation as a whole, with the assumption that the [agency at issue] intended each of the regulation's terms to convey meaning." *Lara*, 207 F.3d at 787 (citing *Bailey v. United States*, 516 U.S. 137, 143–45 (1995)).

We agree with the appellant that, under the plain language of the regulations, only the "master or other person having charge of the ship" is responsible for maintenance of the oil record book. Section 151.25 asserts that each ship is required to maintain an oil record book, and then immediately thereafter explicitly and exclusively designates the "master" of the ship as the individual "responsible" for maintaining such a record book. *See* 33 C.F.R. §§ 151.25(a), (j). The regulations mention only the "master" when assigning responsibility for maintaining the oil record book, which plainly indicates that the responsibility does not extend to others on the vessel. *See Thompson v. Goetzmann*, 337 F.3d 489, 499 (5th Cir. 2003) (invoking the "well-known interpretative canon, *expressio unius est exclusio alterius*—'the expression of one thing implies the exclusion of another'").

Our conclusion is bolstered by the fact that, with respect to other record book obligations, the regulations explicitly contemplate liability for a crew member in Fafalios's position. The subsection addressing the logging and signature requirements extends criminal liability to the "person or persons in

No. 15-30146

charge of the operations concerned." *See* 33 C.F.R. § 151.25(h); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("'[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another'" (quoting *Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994)).[2]

The government concedes that Fafalios was not the "master or other person having charge" of the *Trident Navigator*, but offers several reasons why, it its view, Fafalios nevertheless violated 33 C.F.R. § 151.25. First, the government contends that Fafalios was the "person . . . in charge of the operations concerned [i.e., the dumping of bilge water]," and thus had an obligation to record the dumping of dirty bilge water and sign the oil book entry. *See* 33 C.F.R. § 151.25(h) (Each operation [i.e., dumping of bilge water] . . . shall be fully recorded without delay [and] shall be signed by the person or persons in charge of the operations concerned."). According to the government, the signing and recording obligations found in the regulations are continuing in nature, such that Fafalios's failure to record a bilge water dumping became a prosecutable offense once Fafalios's ship entered U.S. waters.

In making this argument, the government conflates a failure to "record" a dumping in the oil record book with a failure to "maintain" the oil record book going forward. Under 33 C.F.R. § 151.25(h), Fafalios no doubt was required to record the dumping of the untreated bilge water; Fafalios ignored that requirement when he failed to make such an entry. This action, however, occurred while Fafalios was still in international waters, and nothing in the regulations indicates that a failure to sign a record entry is a continuing

---

[2] That *BFP* concerns interpretation of a statute instead of a regulation does not affect its value. As stated, absent a special exception, this court interprets regulations in the same manner as it does statutes. *See Anthony*, 520 F.3d at 380.

offense. In fact, our past precedents show that a failure to sign an oil record book while still in international waters, standing alone, is not a violation of either APPS or its attendant regulations. *See Jho*, 534 F.3d 398.

The facts in *Jho* are similar to the facts of this case. Like Fafalios, the defendant in *Jho* was a chief engineer who failed to sign the oil record book after an improper bilge-water discharge. The defendant's ship later entered U.S. waters. After the ship docked in a U.S. port, the defendant was charged with aiding and abetting the failure to maintain the oil record book under 33 U.S.C. § 1908(a) and 33 C.F.R. § 151.25. *See id*. at 401; *id*. at 402 n.1. The district court dismissed the indictment on the ground that the unrecorded dumping occurred outside U.S. waters. *Id*. at 402.

The Fifth Circuit reversed the district court's dismissal. The *Jho* court emphasized that 33 C.F.R. § 151.25 criminalizes a failure to *maintain* oil record books and that, upon entering U.S. waters, a foreign-flagged vessel may expose itself to liability by carrying with it knowingly inaccurate oil record books. At no point, however, did the *Jho* court suggest that the defendant's mere failure to sign the book while still in international waters was an independent ground for liability. In fact, the *Jho* court explicitly held that "Jho['s] argume[nt] that he is not the 'master or other person having charge of [the] ship' . . . is inapposite [because] the government charged Jho with aiding and abetting the oil record book offense[] [of failure to maintain]." *Jho*, 534 F.3d at 402 n.1.

Beyond *Jho*, several independent reasons support the conclusion that Fafalios's failure to sign the record book is not a continuing offense. First, the regulation imposes a duty to record and sign the operation "without delay." This phrase implies that Fafalios committed the offense as soon as he failed to sign the record book and that the offense thus was completed before Fafalios entered U.S. waters. If the regulations were meant to impose a continuing

duty, they could have done so with different language, for example by requiring that Fafalios, as chief engineer, "maintain" the record book. *Cf. id.* at 403 ("[W]e read the requirement that an oil record book be 'maintained' as imposing a duty upon a foreign-flagged vessel to ensure that its oil record book is accurate (or at least not knowingly inaccurate) upon entering the ports of navigable waters of the United States.").

The government also argues that, even assuming that Fafalios's position as the "person in charge of the operations concerned" does not independently subject him to criminal liability for failure to complete and sign an oil record, the regulations separately required that Fafalios "maintain" an accurate oil record book once the ship entered U.S. waters. Specifically, the government points out that, in addition to imposing on the master a duty to "maintain" the oil record book, the regulations also impose a duty to "maintain" the record book on the ship itself. 33 C.F.R. § 151.25(a) ("Each . . . ship of 400 gross tons and above . . . shall maintain an Oil Record Book."). According to the government, the ship's duty to maintain the record book applies to Fafalios individually, at least for the records he must sign as the chief engineer.

Of course, in making this argument, the government must account for the fact that 33 C.F.R. § 151.25 uses the word "maintain" twice in close proximity, stating that "[e]ach . . . ship of 400 gross tons and above . . . shall maintain an Oil Record Book" and that "[t]he master or other person having charge of a ship required to keep an Oil Record Book shall be responsible for the maintenance of such record." *See* 33 C.F.R. §§ 151.25(a), (j). The government contends that the word "maintain" has a different meaning in subsection (a), when discussing the ship itself, than it does in subsection (j), when discussing the "master" of the ship individually. According to the government, the only duty to "maintain" the record book—in the sense of keeping it accurate—attaches to the ship (and thus, to anyone on the ship who

8

is charged with signing the record book).  Conversely, when the regulation states that the master must "maintain" the record book, it simply means that he is in charge of the physical custody of the record book, not that he bears any special duty to ensure that the record book is accurate.

This argument is foreclosed by traditional rules of statutory construction, not to mention common sense.  Nothing in 33 C.F.R. § 151.25 suggests that "maintain" should have two totally different meanings as the word is used in the regulations. A longstanding canon of statutory construction holds that "'identical words used in different parts of the same act are intended to have the same meaning.'" *United States v. Cooper*, 135 F.3d 960, 962 (5th Cir. 1998) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)).  Furthermore, the rule of lenity cautions against adopting the government's strained reasoning regarding why the duty to "maintain" the oil record book should extend to Fafalios.  *See United States v. Kaluza*, 780 F.3d 647, 669 (5th Cir. 2015) (stating that the rule of lenity requires that "ambiguous criminal laws be interpreted in favor of the defendants subjected to them" (internal quotations omitted)).  Finally, even ignoring the portion of the regulation regarding the master's obligations, the government offers no convincing explanation for why § 151.25(a)'s requirement that the ship maintain a record book should be delegated to Fafalios specifically, especially given that the ship itself may be held liable *in rem* for any violation of the regulations, and thus have a bond fixed on it and its departure clearance withheld pending payment of a fine.  *See* 33 U.S.C. § 1908(d).[3]

---

[3] The government also argues that "maintain" must have two different meanings because, if the requirement that the master "maintain" the record book meant that he must ensure that it was accurate, then there would be no reason to require the master to sign the record book.  This contention is without merit.  Requiring the master to physically sign the record book increases the odds that the master would detect any irregularities and makes

Next, the government argues that the Coast Guard has a well-known practice of enforcing the oil record book regulations against chief engineers and that this practice is entitled to at least some deference. This argument is without merit, however, given that the interpretation at issue is in no way inconsistent with prosecutions of chief engineers. As stated, chief engineers can be prosecuted for failure to sign an oil record book when that failure occurs on U.S.-flagged vessels or in U.S. waters. They apparently may be prosecuted for aiding and abetting the failure to maintain an accurate record book, as the defendant in *Jho* was. They can be prosecuted for making false statements to a Coast Guard investigator, as Fafalios was. Chief engineers on foreign-flagged vessels cannot, however, be prosecuted simply for having previously failed to maintain an oil record book once a ship enters U.S. waters, since 33 C.F.R. § 151.25 assigns that duty explicitly and exclusively to the "master or other person having charge of the ship." The Coast Guard's past practices in applying its regulations do not provide a convincing reason to deviate from the plain language of the regulation itself.

Finally, in what amounts to a pure policy argument—an unusual argument to make with respect to the interpretation of a criminal statute—the government argues that reading the regulation as imposing the duty to maintain the record book only on the "master" of the ship would allow chief engineers to falsify records and conceal their falsification from the master. In this scenario, according to the government, neither the chief engineer nor the master would be liable, since only "knowing" violations are criminalized. We are unpersuaded. First, even if this were true, contrived hypotheticals provide little reason to depart from the plain language of the statute and regulations.

proving his involvement in any fraud easier. This provides ample reason to require the master to sign even though he is already obliged to ensure the accuracy of the record.

No. 15-30146

Second, as has already been explained, any Coast Guard investigation will likely involve asking the chief engineer whether the oil record book is accurate; any engineer who stands by his falsified records will expose himself to an obstruction charge, just as Fafalios did.[4]

## IV.

In sum, the plain language of 33 C.F.R. § 151.25 states that only the "master or other person having charge of the ship" has a duty to maintain the record book. The government concedes that Fafalios was not the "master or other person having charge" of the *Trident Navigator*. Accordingly, the district court's denial of Fafalios's Rule 29 motion is REVERSED. The judgment of conviction is VACATED, and this case is REMANDED for entry of a judgment of acquittal regarding the charge under 33 U.S.C. § 1908(a).

**REVERSED, VACATED, and REMANDED.**

---

[4] The court also notes that it is the Coast Guard's regulations, and not APPS itself, that limits the scope of prosecution here. If the Coast Guard remains concerned that 33 C.F.R. § 151.25 creates a loophole for individuals such as Fafalios, the agency could amend its regulations in accordance with the applicable procedures.