Liam O'Grady, United States District Judge
This matter comes before the Court on Defendant Arkadiy Bangiyev's Petition for a Writ of Audita Querela Pursuant to 28 U.S.C. § 1651, Dkt. 914, and Defendant Eduard Bangiyev's Petition for a Writ of Coram Nobis/Audita Querela. Dkt. 918. For the following reasons the Petitions are denied.
*437 I. Background
From 2004 to 2014, Defendants were the leaders and partners in a counterfeiting scheme that manufactured over $ 70,000,000 in counterfeit currency over an almost ten year period. This Court found that Arkadiy Bangiyev reasonably knew about at least $ 20,000,000 of counterfeit currency as he was involved at the higher levels of the conspiracy and financed some of the operations. Dkt. 736. This Court found that Eduard Bangiyev was also a leader and "knew that between $ 7,000,000 and $ 20,000,000 was generated by the conspiracy." Dkt. 733.
Defendants pleaded guilty to participating in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). Dkt. 504, 507. In their plea agreements, Defendants agreed to "waive all constitutional and statutory challenges to forfeiture in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment." Dkt. 505, 507.
Each Defendant contested the loss amount identified in their Presentence Reports and therefore the Court held an evidentiary hearing to establish the loss amount on May 28, 2015. Two of the lead law enforcement agents involved in the case testified and were cross-examined. While the Court was concerned that a portion of coconspirator Loz's statements to the agents were not corroborated (December 2013 shipments to the Bangiyevs), the Court found that other testimony was corroborated and credible, and established that the brothers, partners, and leaders of this counterfeit conspiracy had received between $ 2,500,000 to $ 3,000,000 a month from Loz between 2008 to 2011. This sum equaled $ 30,000,000 to $ 36,000,000 and fully supported the $ 20,000,000 loss figure. Further, each Defendant agreed that the loss figure was $ 7,000,000 to $ 20,000,000. So there is no question that each Defendant obtained $ 20,000,000 in proceeds.
After Defendants were sentenced, Preliminary Orders of Forfeiture were entered against each Defendant on October 27, 2015. Dkt. 730, 733. This was followed by an amended order pertaining to Arkadiy Bangiyev entered October 28, 2015, Dkt. 736, and an amended order pertaining to Eduard Bangiyev entered December 23, 2015. Dkt. 757. No appeal of a forfeiture order was ever filed.
Both Defendants filed motions pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct their sentences. Dkt. 781, 800. This Court denied both motions. Dkt. 845, 861. The Fourth Circuit dismissed both appeals. Dkt. 883, 886.
On June 5, 2017, the Supreme Court issued its decision in Honeycutt v. United States. In Honeycutt , the Court held joint and several liability is inconsistent with the statutory language in 21 U.S.C. § 853(a). Honeycutt v. United States , --- U.S. ----, 137 S.Ct. 1626, 1633, 198 L.Ed.2d 73 (2017). Under Honeycutt , criminal forfeiture under § 853(a) is limited to "proceeds the person obtained." Id. The Court went on to clarify that only persons in control of distributing the criminal proceeds in a conspiracy can be found to have "obtained" all the tainted property produced by the criminal enterprise such that they could be held liable for more than the property they physically possessed. Id.
In 2018, the Fourth Circuit extended Honeycutt to apply to 18 U.S.C. § 982, a general forfeiture statute with substantially similar language to the statute at issue in Honeycutt. United States v. Chittenden , 896 F.3d 633, 640 (4th Cir. 2018).
*438 Defendants' forfeitures were entered under 18 U.S.C. § 1963. Although this is not the statute that was at issue in either Honeycutt or Chittenden , Defendants argue the language of the statute is substantively identical to the relevant statutory language in Honeycutt and Chittenden. Therefore, Defendants argue that as in Honeycutt and Chittenden , their forfeiture orders cannot be premised on joint and several liability.
Defendants have petitioned for writs of audita querela , asking the Court to vacate the Amended Preliminary Forfeiture Order and to resentence them in light of Honeycutt. The Government opposes the Petitions, arguing (1) a defendant may only challenge forfeiture on direct appeal, (2) Defendants waived their rights to challenge their forfeiture orders in the language of their plea agreement, (3) a writ of audita querela is not available, (4) Honeycutt does not apply retroactively, and (5) even if Honeycutt did apply retroactively it would not preclude joint and several liability in this case. The Court will take each of these arguments in turn.
II. Analysis
A. A defendant must challenge forfeiture on direct appeal
If a defendant wishes to challenge a forfeiture order entered against him, he must file an appeal within fourteen days of entry of the order. FED. R. APP. P. 4(b). Forfeiture may only be challenged on direct appeal. United States v. Filice , 2018 WL 2326616, at *2 (E.D. Ky. May 22, 2018) ; see also United States v. Alquza , 2017 WL 4451146, at *2 (W.D.N.C. Sept. 21, 2017), aff'd per curiam , 722 F. App'x 348 (4th Cir. 2018) ("Defendant did not timely-or ever-file a direct appeal of the forfeiture orders incorporated into the Amended Judgment, and the time for doing so has now expired. Thus, the forfeiture orders against Defendant are final."). In an unpublished, per curiam opinion the Fourth Circuit endorsed the idea that a motion brought to adjust a forfeiture order under Honeycutt is untimely if it is not brought in a direct appeal. United States v. Alquza , 722 F. App'x 348, 349 (4th Cir. 2018) (per curiam).
Here, neither Defendant challenged his forfeiture on a direct appeal. Further, the time for a direct appeal has run. Defendants' challenges to their forfeiture orders are untimely.
B. Defendants waived their rights to challenge the forfeiture order
Courts consistently uphold waivers of the right to challenge forfeiture when the waiver was knowingly and voluntarily made. See, e.g., Filice , 2018 WL 2326616, at *2. A waiver of the right to challenge forfeiture is binding even if the order would be improper under Honeycutt if issued today. See United States v. Yancey , 707 F. App'x 342, 344 n.1 (6th Cir. 2017) ("[T]he question in this appeal is not whether the forfeiture was proper and our analysis is unchanged even if it was not. [Defendant's] sentence, including the forfeiture order, was final in February 2014, upon the expiration of his time for direct appeal. The question here is whether [defendant] waived his challenge to that (presumptively improper) order. And the answer is that he did.").
Defendants point to language in the plea agreement that states "the Court has jurisdiction and authority to impose any sentence within the statutory maximum." Dkt. 505, 507. Defendants emphasize that the forfeiture waiver is expressly limited to "forfeiture carried out in accordance with this plea agreement." Id. Defendants argue that according to the holding in Honeycutt their forfeitures exceed the statutory maximum, and therefore are *439 not in accordance with the plea agreement. This argument fails because there is no statutory maximum or maximum penalty for forfeiture. United States v. Day , 700 F.3d 713, 732-33 (4th Cir. 2012) ; United States v. Alamoudi , 452 F.3d 310, 314 (4th Cir. 2006) ("[T]here is no statutory (or guideline) maximum limit on forfeitures. Rather, criminal forfeitures are indeterminate and open-ended ....").
Defendants entered into plea agreements in which they knowingly and voluntarily waived their rights to challenge forfeiture. The forfeitures did not exceed the statutory maximum or maximum penalty and so the waiver applies.
C. The writ of audita querela is not available
The All Writs Act, 28 U.S.C. § 1651, provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Common-law writs under the All Writs Act survive "to the extent that they fill 'gaps' in the current system of postconviction relief." United States v. Valdez-Pacheco , 237 F.3d 1077, 1079 (2001).
Defendants argue a writ of audita querela is appropriate in this case because Honeycutt represents a substantive change in settled law that provides a new legal objection to their forfeitures, and they have no other remedy available, as forfeiture cannot be attacked collaterally under 28 U.S.C. § 2255. Defendants rely on United States v. Crews , No. 10-633-04, DE:607 (E.D. Pa. Jan. 23, 2018), a case in which the Eastern District of Pennsylvania applied Honeycutt retroactively and granted a writ of audita querela after a forfeiture judgment. However, in Crews the government conceded that the rule announced in Honeycutt was a substantive rule that has retroactive effect (although later in the case it attempted to reverse its position) and the defendant preserved the forfeiture issue by raising it on appeal. Id. at 2 n.1. Here, the government has made no such concession and Defendants did not appeal their forfeitures.
As described in more detail below, this Court does not find that the rule announced in Honeycutt was substantive and should be applied retroactively. As Honeycutt does not provide a justification to adjust Defendants' forfeitures, there has been no intervening change in the applicable law since the forfeiture orders were entered and a writ of audita querela is not available.
D. Honeycutt does not apply retroactively
In its decision in Honeycutt , the Supreme Court did not state that the new rule regarding forfeiture articulated in the opinion would be retroactive. Therefore, it will only be applied retroactively on collateral review if it fulfills the requirements of Teague v. Lane.
Under Teague , a new rule will be applied retroactively if it (1) is substantive in that it alters the range of conduct or class of people that the law punishes or (2) it is a watershed rule of criminal procedure. Teague v. Lane , 489 U.S. 288, 307, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).
The Court finds the rule put forward in Honeycutt did not alter the range of conduct or class of people that the law punishes. Instead, Honeycutt "decided only whether joint and several liability could be imposed as a consequence of that conduct." United States v. Ortiz , 2018 WL 3304522, at *8 (E.D. Pa. July 5, 2018). Further, Honeycutt did not proclaim a watershed rule of criminal procedure that implicates the fundamental fairness and accuracy of the criminal proceeding. Id. ("The Supreme *440 Court has stated that the decision in Gideon v. Wainwright , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) 'illustrate[s] the type of rule coming within the exception' to Teague for watershed rules. The rule in Honeycutt merely clarifies the interpretation of a criminal forfeiture statute, falling well short of the Gideon benchmark."). For these reasons, the rule pronounced in Honeycutt does not fall into the narrow exception laid out in Teague and will not be applied retroactively.
E. Honeycutt does not preclude joint and several liability in this case
Even if Honeycutt applied retroactively, Defendants could still be held jointly and severally liable for the forfeiture amounts. Honeycutt bases its reasoning on drawing a distinction between a mastermind who controls the criminal operation and a lower figure who only has access to and control over the smaller amount of tainted property directly in his possession. Honeycutt , 137 S.Ct. at 1633. Picking up on this distinction, lower courts have declined to apply Honeycutt in cases where the defendant held a position of control in the criminal operation. See, e.g., S.E.C. v. Metter , 706 Fed. App'x 699, 702 n.2 (2d Cir. 2017) (declining to apply Honeycutt to a defendant who controlled the enterprise at issue in part because Honeycutt only "protects incidental figures from forfeiture of amounts far beyond what would be justified by their role in the offense"); United States v. Ward , 2017 WL 4051753, at *3 (W.D. Mich. Aug. 24, 2017), report and recommendation adopted, No. 2:16-CR-06-01, 2017 WL 3981160 (W.D. Mich. Sept. 11, 2017) (declining to apply Honeycutt because "Defendant is closely akin to the hypothetical ... mastermind described in Honeycutt ").
Here, both Defendants were in a similar position as the hypothetical mastermind described in the Honeycutt opinion. Arkadiy Bangiyev knew at least $ 20,000,000 in counterfeit currency had been produced in the course of the conspiracy and Eduard Bangiyev knew between $ 7,000,000 and $ 20,000,000 in counterfeit currency had been produced in the course of the conspiracy. Neither was an incidental figure, but rather were at the center of a large, sophisticated conspiracy to produce and sell counterfeit currency for ten years. Therefore, even if Honeycutt could be applied retroactively it would not be applied in this case.
III. Conclusion
For the above reasons, Defendant Arkadiy Bangiyev's Petition for a Writ of Audita Querela Pursuant to 28 U.S.C. § 1651, Dkt. 914, is DENIED . Defendant Eduard Bangiyev's Petition for a Writ of Coram Nobis/Audita Querela, Dkt. 918. is DENIED .
It is SO ORDERED .