**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0013n.06

Case No. 20-5031

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Jan 07, 2021

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| GULED MOHAMED, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KETHLEDGE, THAPAR, and READLER, Circuit Judges.

THAPAR, Circuit Judge. Guled Mohamed pled guilty to participating in a drug-trafficking conspiracy. The district court sentenced him to 151 months in prison and ordered him to forfeit $200,000. Mohamed appeals only the forfeiture order. We affirm.

I.

Guled Mohamed conspired to distribute fentanyl, heroin, cocaine, and methamphetamine. As part of the conspiracy, he directed the mailing of large quantities of drugs from Arizona to a co-conspirator in Georgia. Federal agents intercepted a few of these shipments. But at least six other shipments (including some by courier) got through.

Mohamed and his co-conspirators were indicted and charged with conspiracy and distribution. *See* 21 U.S.C. §§ 841, 846. The conspiracy, as charged in a superseding indictment, spanned from about May 1 to November 20, 2017. Mohamed eventually pled guilty.

The government then began criminal forfeiture proceedings. The federal government may seek forfeiture of any property used in or obtained from a serious drug offense. 21 U.S.C. § 853(a); *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017). To do so, the prosecution must prove a nexus between the property at issue and the criminal offense. *United States v. Jones*, 502 F.3d 388, 391–92 (6th Cir. 2007). And if the government can't recover the property, it may seek a money judgment against "the defendant for an amount equal to the value of the property that constitutes the proceeds of the drug violation." *United States v. Bevelle*, 437 F. App'x 399, 407 (6th Cir. 2011).

Here, the government sought the forfeiture of $200,000. The district court granted the request based on several pieces of evidence. For starters, the government intercepted a phone call between Mohamed and one of his co-conspirators. On that call, Mohamed discusses the drug-trafficking conspiracy and says, "I made like probably about 200, right at 200." The district court found that "[t]he statement, considered in context, strongly indicates that [Mohamed] . . . made approximately $200,000" from the conspiracy.

What's more, at least six packages were mailed from Arizona to Mohamed's co-conspirator in Georgia and never intercepted by the government. Based on testimony from various federal agents and other record evidence, the district court found that these packages likely contained drugs, and that a "conservative[]" estimate of the drugs' value was $197,500. Mohamed also admitted to receiving one pound of heroin worth $30,000. So the district court found that it was

more likely than not that Mohamed received at least $200,000 in illicit proceeds. It entered a forfeiture order in that amount. This appeal followed.

II.

Mohamed raises two challenges to the district court's forfeiture order. We review the district court's factual findings for clear error. *United States v. Droganes*, 728 F.3d 580, 586 (6th Cir. 2013). Finding neither of Mohamed's arguments persuasive, we affirm.

A.

Mohamed first argues that the district court erred in finding that the six unintercepted packages likely contained drugs. He says that the district court relied on impermissible speculation in reaching its conclusion. We disagree.

At his plea hearing, Mohamed admitted to coordinating shipments of drugs from Arizona to an address in Georgia. The government intercepted three such packages. The packages contained 4.3 kilograms of methamphetamine and 990 grams of fentanyl. The government then identified six parcels that it had not intercepted. Those unintercepted parcels came from the same supply location in Arizona and went to the same address in Georgia. They were also addressed to the same fictitious recipient: "Jenifer Wade."

Next, Mohamed argues that even if the six unintercepted packages contained drugs, the district court erred in making findings about the types and amounts of drugs that were likely in those packages. But he does not develop this argument, so it is forfeited. *United States v. Wooden*, 945 F.3d 498, 506 (6th Cir. 2019).

Finally, while most of the evidence was circumstantial, his statement on the call with a co-conspirator was not. And that statement—that Mohamed "made like probably about 200, right at 200"—is further evidence that the six unintercepted packages contained drugs. After all,

Mohamed surely didn't make any money on the three packages the government intercepted. Seeing no clear error, we will not disturb this finding of the district court.

B.

Mohamed next argues that the forfeiture order depended on conduct outside his involvement in the conspiracy. Since federal law requires that forfeiture property derive from a defendant's actual involvement in an offense, Mohamed contends that the forfeiture order was improper. *Honeycutt*, 137 S. Ct. at 1630; *Kaley v. United States*, 571 U.S. 320, 323–24 (2014). But there is a problem with his argument: The forfeiture was based only on Mohamed's conduct.

To understand why, we need to take a closer look at Mohamed's argument. Here's the gist: The six unintercepted parcels were shipped between July 13 and October 6, 2017. Mohamed claims he was not involved in the conspiracy until September 27, 2017. Thus, he says, he cannot be held liable for any drugs shipped before that date.

This argument falls short for two reasons. First, the indictment specifically charged Mohamed with engaging in the conspiracy from May 1 to November 20, 2017. Mohamed pled guilty to that charge and raised no objection to the alleged timeframe. During Mohamed's plea hearing, the district court reiterated that the indictment charged him with engaging in the conspiracy from "about May 1, 2017 [to] November 20 of 2017." Mohamed said he understood the charge and then pled guilty. His post-hoc efforts to narrow the scope of his plea are unavailing.

Second, the government established through circumstantial evidence that Mohamed was responsible for the packages sent before September 27, 2017. As noted above, Mohamed admitted to directing three drug shipments after that date. Because the six unintercepted packages relied on the same modus operandi—including the same Arizona supply location, the same Georgia delivery

address, and the same fake delivery alias—the district court reasonably found that Mohamed directed the earlier shipments too. *Cf.* Fed. R. Evid. 404(b)(2).

To be sure, a footnote in the Probation Office's Presentence Report identifies September 27, 2017, as the "earliest concrete date that the defendant can be identified as being involved in the instant offense." The Probation Office then used that date to calculate Mohamed's criminal history score. And at sentencing, the district court said that this date is when Mohamed's involvement in the conspiracy "apparently" began.

But as the district court later clarified in its forfeiture opinion, this September date simply reflected the earliest "direct evidence" of Mohamed's involvement in the conspiracy. Other "circumstantial evidence" showed that he conspired throughout the summer of 2017 and directed the shipment of the six unintercepted packages. While there may be some tension in the district court's various statements, it did not clearly err in finding that Mohamed directed the six unintercepted drug shipments.

We affirm.