19-4238 (L)
*United States v. Mathieu*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-one.

PRESENT:    Guido Calabresi,
            Barrington D. Parker,
            Steven J. Menashi,
                 *Circuit Judges.*

_____

United States of America,

    *Appellee,*

   v.                                            Nos. 19-4238 (L), 20-480 (Con)

Paul J. Mathieu,

    *Defendant-Appellant.**

_____

---

* The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*: DAVID RAYMOND LEWIS, Assistant United States Attorney (Stephen J. Ritchin, Timothy V. Capozzi, Thomas McKay, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant*: JOSEPH W. MARTINI, Spears Manning & Martini, LLC, Southport, CT.

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Paul J. Mathieu appeals from a judgment of conviction entered on December 12, 2019, following a six-week trial. On appeal he argues that his judgment should be reversed, or that he be granted a new trial, because of multiple instances of prosecutorial misconduct at trial, erroneously admitted evidence at trial, and insufficient evidence at trial to establish his knowledge and intent. He also argues that the district court's forfeiture order

2

should be vacated in part because he did not exercise sufficient control over certain categories of the money judgment to justify forfeiture over those amounts. We disagree and **AFFIRM** the district court's judgment in full. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I

Mathieu, a board-certified physician, organized a large healthcare scheme that defrauded the federal Medicare and New York State Medicaid programs of tens of millions of dollars. Mathieu established clinics that he unlawfully operated with his co-conspirator, Aleksandr Burman, who was not a licensed medical professional and who could not own a medical professional corporation under New York law. In addition to representing himself as the owner of the clinics, Mathieu signed prescriptions and superbills for medically unnecessary adult incontinence diapers for patients he never examined.

At trial, the government presented evidence of the fraudulent scheme, including testimony from cooperating witnesses confirming that they prepared the fraudulent patient charts, superbills, and prescriptions that Mathieu signed in furtherance of the scheme; stacks of fabricated prescriptions signed by Mathieu;

and checks from Burman's medical supply company signed by Burman to Mathieu with the dates on the checks corresponding to the dates of the fabricated prescriptions. The government also introduced a letter from the Office of the Medicaid Inspector General (the "OMIG letter") which notified Mathieu that he was the top-ranked prescriber of adult diapers based on Medicaid claims data that compared his claims with that of other health care providers in New York (the "Peer Comparison Evidence"). Evidence at trial also showed that Mathieu maintained two bank accounts at Citibank and TD Bank from which Mathieu distributed proceeds of the scheme and into which Medicare deposited funds at Mathieu's direction.

After a six-week jury trial, the jury found Mathieu guilty of conspiracy to commit health care fraud, mail fraud and wire fraud, conspiracy to make false statements relating to health care matters, and the substantive crimes of health care fraud, mail fraud, and wire fraud.[1]

---

[1] Co-defendant Hatem Behiry was also found guilty on all five counts of the indictment. Seven other co-defendants pleaded guilty before trial. Aleksandr Burman also pleaded guilty to participating in the same conspiracy and health care fraud scheme, in *United States v. Burman*, No. 16-CR-190 (S.D.N.Y.).

4

## II

Mathieu argues that a new trial is warranted pursuant to Federal Rule of Criminal Procedure Rule 33 because the government engaged in multiple instances of prosecutorial misconduct at trial. Mathieu first argues that the prosecution improperly asked him to opine on the credibility of other witnesses by asking Mathieu during cross-examination if he thought the testimony of the government's cooperating witnesses was "true," "untrue," "false," "all false," "completely wrong," "wrong" or "mistaken." Trial Tr. 2749-61, 2763-64, 2769, 2828. Mathieu contends that the government compounded these errors at summation by characterizing Mathieu's testimony as "lies," "absurd lies," an "imaginary story, "this lie," and a "crazy" and "ridiculous story." Trial Tr. 3265, 3309-12. This argument fails.

The district court did not abuse its discretion by denying Mathieu's motion for a new trial on the basis of prosecutorial misconduct. *See United States v. Forbes*, 790 F.3d 403, 406 (2d Cir. 2015) (reviewing a district court's denial of a Rule 33 motion for a new trial for abuse of discretion). First, Mathieu is unable to show that the prosecution's questions during cross-examination were improper. We have distinguished between cross-examination questions that compel a defendant

5

to characterize a government witness as a liar—which are improper—and those that compel a defendant merely to characterize a government witness's testimony as mistaken. *See United States v. Gaind*, 31 F.3d 73, 77 (2d Cir. 1994) ("[T]here is a significant difference between these formulations. Asking a witness whether a previous witness who gave conflicting testimony is 'mistaken' highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a 'liar.'"). The prosecution's questions here fall on the proper side of the line.[2]

Mathieu's argument that the government compounded the problem at summation similarly falls short. Given the volume of evidence introduced at trial by the government against Mathieu, the prosecution's statements, "when viewed

---

[2] We need not decide whether *United States v. Richter*, 826 F.2d 206 (2d Cir. 1987), applies to cases, such as this one, involving cooperating witnesses. In *Richter* we held that prosecutorial statements asking the jury to contrast the defendant's credibility with that of the government's witness who was a law enforcement agent was prejudicial error because the jury may perceive law enforcement agents to be truthful. *Id.* at 208-10. Mathieu argues the same logic applies to government cooperators. But here, the cooperators were participants in the charged criminal activity, and it is unclear why the jury would be likely to presume their truthfulness. Indeed, the district court instructed the jury that it could consider the "fact that a witness is an accomplice … as bearing upon her credibility" but cautioned against assuming "that simply because a person has admitted participating in one or more crimes, she is incapable of telling the truth about what happened." App'x 157. This instruction would have been unnecessary if the jury were inclined to regard the government cooperators as highly credible.

against the entire argument to the jury, and in the context of the entire trial," were not "so severe and significant as to have substantially prejudiced [Mathieu], depriving him of a fair trial." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks omitted). We are reinforced in this conclusion because (1) the charges against Mathieu required the jury to evaluate his credibility; (2) Mathieu's statements that he did not commit the crimes with which he was charged and that he did not take the actions that the government witnesses described put his credibility at issue; and (3) Mathieu himself questioned the credibility of the government witnesses, calling their testimony "remarkably incredible," "rehearsed testimony," "so rehearsed and so predictable," "[s]imply incredible claims," a "stunning example of rehearsed testimony," "incredible," and "simply incredible," and suggesting that the witnesses "have an incredible motive to lie." Trial Tr. at 3338, 3339, 3347, 3351, 3348.

In any event, any errors arising from the challenged statements were harmless. Mathieu's own testimony at trial showed that he knowingly and willfully misrepresented to Medicare and Medicaid that he was the owner of clinics that his co-defendant Burman owned and controlled. The government also offered, among other evidence, (1) witness testimony that Mathieu signed charts

7

and prescriptions based on a list provided by Universal Supply Depot ("USD"), a medical supply company operated by Burman and his wife, which Mathieu faxed to the clinics without Mathieu's seeing or examining the patients listed; (2) stacks of prescriptions from the days Mathieu did not see patients and which Mathieu admitted at trial that he had signed; (3) cell site evidence that placed Mathieu in South Brooklyn, where the clinics were located, for a few hours on days and at times when the clinics were closed to patients; (4) checks from USD signed by Burman to Mathieu with the dates on the checks corresponding to the dates of the signed prescriptions; and (5) witness testimony that Burman and Mathieu met more than 10 times to discuss prescriptions and that Burman emerged from those meetings with signed prescriptions that Burman asked to be delivered to USD. Given the volume of this evidence at trial and the strength of the government's case against Mathieu, any error stemming from the prosecution's questions and statements about truthfulness did not alter the verdict. *See United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015).

### III

The district court also did not abuse its discretion by admitting the OMIG letter that notified Mathieu that he was the top-ranked prescriber of adult diapers

8

as well as the related peer comparison evidence that compared Mathieu's claims data with other health care providers in New York. Evidence of disproportionately high billing and prescription of adult diapers in comparison to other providers tends to prove the fraudulent scheme, and the district court did not err in so concluding.

Moreover, the OMIG letter was probative of Mathieu's knowledge of and intent to further the fraudulent scheme. Mathieu reiterates his argument that he did not receive the OMIG Letter—because it was sent to the wrong address—and therefore the letter cannot show his knowledge of the fraudulent scheme. Yet the district court acknowledged that the OMIG Letter was admissible as proof of Mathieu's knowledge and intent only because the government proffered witnesses who testified that the mail was forwarded to Mathieu's correct address. The district court acted within its discretion to conclude that the circumstances surrounding Mathieu's receipt of the OMIG Letter presented a question of fact for the jury and that the defense could (and did) seek to undermine the credibility of the government's witnesses and otherwise present Mathieu's version of the facts.

Reviewing the district court's ruling under the "highly deferential standard" we apply to evidentiary rulings under Rule 403, we conclude that it was not erroneous to admit the peer comparison evidence or the OMIG Letter. *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012).

**IV**

Finally, Mathieu argues that the district court's forfeiture order should be vacated in part because he did not exercise sufficient control over two collections of checks that Mathieu signed: one from the Citibank account and the other from the TD Bank account. "On appeal from a forfeiture order, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Annabi*, 746 F.3d 83, 85 (2d Cir. 2014).

When forfeiture is sought in the form of a personal money judgment, the district court "must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(l)(A). Under Rule 32.2, "the court may determine whether a property is subject to forfeiture 'based on evidence already in the record,' Fed. R. Crim. P. 32.2(b)(l)(B), including testimony at the earlier trial." *United States v. Sabhnani*, 599 F.3d 215, 262 (2d Cir. 2010). "District courts are afforded broad discretion in calculating illicit gains based on the circumstances of

10

a case." *United States v. Walters*, 910 F.3d 11, 32 (2d Cir. 2018). "The calculation of forfeiture amounts is not an exact science," and therefore district courts "need only make a reasonable estimate of the loss, given the available information." *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011). The district court may "make reasonable extrapolations from the evidence established by a preponderance of the evidence at the sentencing proceeding." *Id.*

The district court did not err in ordering forfeiture in the amount of $760,539, calculated in part from the disputed checks signed by Mathieu from two separate bank accounts that he controlled. The district court made several findings based on the evidence introduced at trial. The district court considered and rejected Mathieu's argument that only his co-conspirators controlled and distributed funds from both accounts. First, the district court rejected Mathieu's testimony that he "rarely looked" at the Citibank account because, the district court explained, Mathieu was the "sole signatory" for the account, Mathieu had deposited more than ninety checks into the account, and Medicare deposited funds into this account at Mathieu's direction. Special App'x 79-80.

The district court also considered and rejected Mathieu's argument he was unaware of activity in the TD Bank Account because he had signed ninety blank

11

checks from that account in "one sitting" without knowing how the checks would be addressed. The district court was unpersuaded because—among the ninety checks signed by Mathieu—there were interspersed checks signed by Burman, indicating that the checks could not have been signed in one sitting. The district court rejected Mathieu's "insufficient control" argument for the additional reasons that Mathieu was a co-signatory on the TD Bank Account, he signed Medicare and Medicaid enrollment documents in which he claimed to be the owner of the Ocean View clinic for which the account was established, Medicare deposited funds into the account at Mathieu's direction, and at trial, he testified to signing eighty-seven checks from the account.

Accordingly, the evidence established that Mathieu had sufficient control over the assets in both challenged accounts. For that reason, the district court's determination of forfeiture was not erroneous.[3]

---

[3] Mathieu's reliance on *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), in which the Court held that the defendant, who managed sales and inventory for a hardware store owned by his brother, did not acquire or control any of the criminal proceeds beyond his own salary, *id.* at 1635, is unavailing. Unlike the circumstances in *Honeycutt*, Mathieu was a signatory on the disputed accounts (and even the *sole* signatory on the Citibank account) from which he distributed fraud proceeds and into which he deposited fraud proceeds and directed Medicare to deposit funds.

\*　　\*　　\*

We have considered Mathieu's remaining arguments, including his challenge to the sufficiency of the evidence. We conclude that those arguments are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court