**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4547

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ALLEN LAMIN,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge.  (8:20−cr−00044−PX−1)

Submitted:  October 3, 2022                    Decided:  November 8, 2022

Before WILKINSON and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, Cullen MacBeth, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Erek L. Barron, United States Attorney, Baltimore, Maryland, Rajeev R. Raghavan, Assistant United States Attorney, Jennifer L. Wine, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After over a year of stealing blank money orders from United States Post Offices, forging fake amounts on them, and then depositing them under fake identities and fictitious entities, Allen Lamin was arrested and pled guilty to five counts of bank fraud, in violation of 18 U.S.C. § 1344. The district court found that these fraudulent acts involved "sophisticated means," so it imposed a sentence enhancement under U.S.S.G. § 2B1.1(b)(10)(C). Lamin was sentenced to 84 months in prison, and the district court entered a forfeiture order of $62,900 against him. He now appeals the sentence enhancement, asserting that his acts of fraud were no more intricate or complex than typical bank fraud, and the forfeiture order, claiming that the government introduced no evidence that Lamin actually obtained the funds at issue. The district court did not err in either respect, so we affirm.

I.

Between February 2019 and April 2020, Allen Lamin repeatedly committed bank fraud. His *modus operandi* was to enter United States Post Offices, steal blank postal money orders, alter them by using a printer to affix legitimate issue dates and USPS unit numbers, and then negotiate with several financial institutions to deposit the money orders under false names, fictitious entities, and stolen identities. Lamin often forged the money orders to be worth between $800 and $1,000. Once the illicit funds had been deposited, Lamin would use the accounts for personal use. *See United States v. Lamin*, No. CR PX-20-44, 2021 WL 1265232 at *1 (D. Md. Apr. 6, 2021). Lamin began his criminal enterprise in Maryland, but was later arrested in Texas, where he fled to avoid law enforcement and

continue defrauding banks. *Id.* After stealing blank orders from roughly half a dozen post offices, altering hundreds of money orders, and depositing them across several financial institutions, Lamin raked in hundreds of thousands of dollars in ill-gotten gains.

Lamin was charged with five counts of bank fraud in violation of 18 U.S.C. § 1344, to which he pled guilty. At sentencing, the district court applied a 12-level enhancement because the loss attributable to Lamin was more than $250,000, a 2-level enhancement because Lamin's offense involved 10 or more victims, and a 2-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) because Lamin's offense involved sophisticated means. J.A. 282–94. Lamin also received a 2-level acceptance of responsibility reduction. The district court calculated a final offense level of 21 and sentenced him to a within-Guidelines sentence of 84 months in prison. The district court also entered a $62,900 forfeiture money order against Lamin, which represented the proceeds Lamin had obtained as a result of his scheme to defraud. J.A. 111.

## II.

Lamin appeals on two issues. First, he challenges the sentence enhancement under U.S.S.G. § 2B1.1(b)(10)(C), arguing that his offense did not involve sophisticated means. Second, Lamin contests the district court's forfeiture order of $62,900, asserting that the government failed to show that Lamin actually acquired that money after it was deposited. We address each issue in turn.

## A.

"Whether a defendant's conduct involved sophisticated means is a factual inquiry that we review for clear error." *United States v. Savage*, 885 F.3d 212, 228 (4th Cir. 2018)

3

(quoting *United States v. White*, 850 F.3d 667, 675 (4th Cir. 2017)). The bank fraud guidelines apply a 2-level enhancement for offenses involving "sophisticated means" when the "defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). For the means to be sophisticated, they must be "especially complex or especially intricate." U.S.S.G. § 2B1.1, cmt. n.9(B). This Court has held that the enhancement is appropriate "when there is proof of complexity beyond the minimum conduct required to establish" a bank fraud violation "in its simplest form." *Savage*, 885 F.3d at 228 (internal quotation marks omitted).

Here, Lamin's offenses went well beyond simple bank fraud. Lamin's behavior for over a year evinced a sophisticated and intricate method of meticulously altering blank money orders and negotiating with numerous financial institutions to deposit the funds under a web of fake names, stolen identities, and fictious entities. Lamin argues that these actions were quite ordinary, and the fact that he often repeated this process does not increase the level of sophistication.

Lamin's argument goes against our clear guidance: Courts are to weigh the "cumulative impact of the criminal conduct, for the total scheme may be sophisticated in the way all the steps were linked together." *United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012) (internal quotation marks omitted). Lamin executed a scheme involving various post offices, at least ten victims, a handful of fictitious entities, numerous bank accounts, several financial institutions, and multiple states for approximately 14 months. What might appear simple in isolation here becomes complex in combination. Thus, the district court did not clearly err in its finding of "sophisticated means."

4

B.

Regarding whether we must reverse the $62,900 forfeiture order, there is a dispute over the standard of review. Lamin argues that he properly challenged the order at the district court level, and we should therefore review this issue de novo. The government asserts that Lamin failed to raise it before the district court, and we should therefore review this issue for plain error. The standard of review is of no consequence, however, because the district court did not err in any respect.

In imposing a sentence for bank fraud, the district court "shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation." 18 U.S.C. § 982(a)(2)(A). The district court "must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). District courts are "afforded broad discretion in calculating illicit gains based on the circumstances of a case." *United States v. Walters*, 910 F.3d 11, 32 (2d Cir. 2018). To establish whether a defendant's illicit gains are subject to forfeiture, the district court must ask whether the defendant had "dominion and control" over the money at issue. *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005).

Applying this test, the district court found that Lamin's ability to make deposits into various bank accounts demonstrated "dominion and control" over the money at issue, for it showed that Lamin had "obtained the proceeds of a crime when he put[] the money" into various bank accounts. J.A. 330. Relying on *Honeycutt v. United States*, Lamin argues that the government did not prove he ever withdrew the funds, and thus it cannot show he "actually acquired" that money. 137 S. Ct. 1626, 1635 (2017). But Lamin's reliance on

5

*Honeycutt* is misguided. Rather than undermine the district court's findings, *Honeycutt* confirms that a defendant obtains property for the purposes of forfeiture when he "come[s] into possession of" or "acquire[s]" it. *Id.* at 1632. Here, the government established—and Lamin admits—that he deposited $62,900 worth of money orders into various bank accounts following his acts of bank fraud. Thus, he admits that he acquired or came into possession of $62,900. Therefore, the district court did not err in issuing the $62,900 forfeiture order.

Its judgment is therefore affirmed.

*AFFIRMED*

6