[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11256

_____

MAURICE WILLIAM CAMPBELL, JR.,

                                        Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket Nos. 2:16-cv-08021-AKK,
2:10-cr-00186-AKK-JEO-1

_____

Before WILSON and JILL PRYOR, Circuit Judges, and CONWAY,[*] District Judge.

PER CURIAM:

Maurice Campbell, Jr., a federal prisoner, appeals the district court's order dismissing his 28 U.S.C. § 2255 motion without allowing an amendment Campbell proposed. We granted a certificate of appealability as to one issue: whether Campbell's proposed amendment related back to his original § 2255 motion. Because we conclude that even if Campbell's amendment were allowed, he would not be entitled to relief, we affirm.

## I.     Background

In 2011, a federal jury convicted Campbell of 96 counts of wire fraud, mail fraud, money laundering, engaging in monetary transactions in criminally derived property, and conspiracy. The district court sentenced Campbell to 188 months of imprisonment followed by 36 months of supervised release. The court also imposed $5.9 million in restitution, $7.6 million in forfeiture, and a special assessment of $9,600.

As we explained on Campbell's direct appeal, his convictions arose from a scheme to defraud the State of Alabama. Campbell served as the state director of the Alabama Small Business Development Consortium ("ASBDC"). *See United States v.*

---

[*] Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

*Campbell*, 765 F.3d 1291, 1294 (11th Cir. 2014). ASBDC was a consortium of development centers housed by Alabama public universities that provided services—including workforce training and business education—to small businesses within the state. *Id.* These university centers received public funding through ASBDC. *Id.* Campbell raised $7.3 million for ASBDC from the State—funds he persuaded state officials to route through a separate, private entity he controlled, the Alabama Small Business Institute of Commerce ("IOC"). *Id.*

For years, Campbell treated IOC as a slush fund. He spent IOC funds on cars, vacations, clothing, and lavish meals. *Id.* He hired a group of college-aged women he called the "Little Sisters" to work IOC events, paying them inflated rates (as much as $100 an hour) for minimal work and buying them meals, drinks, jewelry, and vacations out of IOC funds. *Id.* at 1295. He funneled IOC money into his own accounts for fraudulent services that were never performed. *Id.* And he encouraged other IOC employees to do the same. *Id.* at 1294–95. In the end, of the $7.3 million Alabama officials entrusted to IOC, only $1.4 million was distributed to small business development centers—a difference of $5.9 million. *Id.* at 1295.

At Campbell's sentencing, the parties hotly disputed the "loss amount" for purposes of calculating Campbell's sentencing range under the Sentencing Guidelines. The parties agreed that Campbell's base offense level under the Guidelines was 7. U.S. Sent'g Guidelines Manual § 2B1.1(a) (U.S. Sent'g Comm'n 2011).

The Guidelines provide that this base level may be enhanced depending on the amount of the loss involved. *Id.* § 2B1.1(b)(1). Campbell maintained that the government had shown, at most, approximately $300,000 in losses, and thus he should receive a 12-level enhancement based on this loss amount. *See id.* § 2B1.1(b)(1)(G). He asserted that IOC's other spending—such as salaries, lobbying, and legal fees—was legitimate. In contrast, the government argued that the State of Alabama suffered $5.9 million in losses; thus, Campbell should receive an 18-level enhancement. *See id.* § 2B1.1(b)(1)(J). The government argued that IOC lacked any purpose apart from fraud and any money not distributed to the development centers was therefore part of the loss amount.

The district court found that the loss amount was at least $2.5 million and applied an 18-level enhancement. *See id.* After applying other enhancements, the district court determined that Campbell's total offense level was 39, which when combined with his criminal history category of I, yielded a guidelines range of 262 to 327 months of imprisonment. After considering the sentencing factors set forth at 18 U.S.C. § 3553(a), the district court determined that a downward variance was appropriate and ultimately sentenced Campbell to 188 months of imprisonment followed by 36 months of supervised release.[1] The district court also imposed

---

[1] Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the

$5.9 million in restitution, $7.6 million in forfeiture, and a special assessment of $9,600.

Campbell appealed, challenging the district court's calculation of the loss amount. On appeal, we explained that there was ample evidence in the record to support the district court's finding that IOC was nothing more than a fraudulent scheme with no legitimate purpose. *Campbell*, 765 F.3d at 1304. We further explained that, as a matter of law, "the monies spent as part of a fraudulent scheme do not become legitimate business expenses simply because other legitimate businesses also incur these expenses." *Id.* at 1305 (alterations adopted) (internal quotation marks omitted). Accordingly, we held that in calculating the loss amount the district court neither committed any procedural error nor abused its discretion in finding Campbell responsible for the full $5.9 million. *Id.* at 1294.

---

statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

Following our affirmance, Campbell moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Campbell's § 2255 motion identified four grounds for relief: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, (3) a conflict of interest affecting the trial judge, and (4) cumulative error.

Campbell's ineffective-assistance claim focused primarily on what he described as "multiple interwoven conflicts of interests" plaguing his attorneys. Civ. Doc. 4 at 29.[2] In the main, Campbell argued that his attorneys were operating under conflicts of interest due to their relationships with several of the universities that housed small business development centers deprived of funding by the scheme. He also expansively asserted that his "counsel's performance at all stages was ineffective as a matter of fact and law." *Id.* at 33. His motion did not clarify what specifically that broad claim of ineffectiveness meant. But his factual statement offered at least one possibility. According to Campbell, his counsel failed to introduce evidence showing "[t]he actual figure distributed to the schools directly and indirectly" by IOC "was at least $6,124,832" and not $1.4 million. *Id.* at 19. Over roughly four pages of his memorandum in support of his motion, Campbell laid out distributions he said his trial counsel failed to demon-

---

[2] "Cr. Doc." refers to the district court's docket entries in Campbell's underlying criminal case: *United States v. Campbell*, no. 2:10-cr-186 (N.D. Ala.). "Civ. Doc." refers to the district court's docket entries in this case, *Campbell v. United States*, 2:16-cv-8021 (N.D. Ala.).

21-11256              Opinion of the Court                    7

strate and described evidence and witnesses he maintained were at hand.

Before the district court ruled on Campbell's § 2255 motion, the United States Supreme Court decided a criminal forfeiture case, *Honeycutt v. United States*, 581 U.S. 443 (2017). *Honeycutt* arose under 21 U.S.C. § 853—a federal statute that mandates forfeiture of the proceeds of certain drug crimes. *See Honeycutt*, 581 U.S. at 445. *Honeycutt* held that this statute did not authorize courts to hold a defendant liable for the forfeiture of property derived by a co-conspirator but never acquired by the defendant. *Id.*

Following *Honeycutt*, Campbell moved to amend his § 2255 motion. In the motion to amend, Campbell asked to present a "new issue"—namely, his contention that, under *Honeycutt* he "must not be held responsible to repay, jointly or severally, through restitution or forfeiture, the $5.9 million . . . as Campbell never 'actually acquired' the property in question." Civ. Doc. 18 at 4. Campbell characterized this "issue" as supporting two claims: "a stand-alone *Honeycutt*" claim and an "ineffective assistance of trial counsel" claim. *Id.* In the proposed amendment, Campbell quoted the district court's restitution order but no other aspect of the sentence. In the proposed amendment, he discussed the relationship between a loss amount under the Guidelines and a restitution amount, but nowhere did he state that *Honeycutt* supported a challenge to the calculation of his guidelines range and thus his term of imprisonment.

The government opposed Campbell's motion, asserting it was untimely. Campbell's conviction became final in March of 2015. He moved to amend in October of 2017. The Antiterrorism and Effective Death Penalty Act ("AEDPA") contains a one-year limitations period for the filing of a § 2255 motion that runs from when a movant's conviction becomes final. 28 U.S.C. § 2255(f)(1). So, the government argued, Campbell was not entitled to amend his § 2255 motion unless another rule specifically authorized the amendment. Campbell did not respond to the government's argument.

The district court denied Campbell's motion to amend, concluding that the proposed amendment was untimely. In doing so, the district court identified and rejected three rules that might have allowed Campbell's proposed amendment.

First, Federal Rule of Civil Procedure 15(a) authorizes amendment as a matter of right within 21 days of service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(B). It also permits amendment with the opposing party's consent. Fed. R. Civ. P. 15(a)(2). But the district court found this rule inapplicable, noting that the government had long ago filed its response to Campbell's original § 2255 motion and also that it opposed the proposed amendment.

Second, AEDPA permits an otherwise untimely § 2255 claim based on a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," provided the claim is made within one year of

"the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). The district court concluded that *Honeycutt* did not announce any such right.

Third, Federal Rule of Civil Procedure 15(c) permits an "amendment to a pleading" to "relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The district court concluded that Campbell's proposed amendment did not relate back because Campbell's "original" motion "d[id] not on its face relate to the subject of his amendment—restitution and forfeiture." Civ. Doc. 27 at 7–8.

Because no rule authorized Campbell to assert a new claim despite § 2255(f)(1)'s limitations period, the district court concluded Campbell's proposed amendment was time-barred. In the same order, the district court denied Campbell's original § 2255 motion for reasons outside the scope of this appeal.

Campbell appealed. The district court construed Campbell's notice of appeal as a motion for a certificate of appealability and denied the motion. Campbell then sought a certificate of appealability from this Court on two issues: (1) whether his proposed amendment related back to his original § 2255 motion and (2) whether he was entitled to an evidentiary hearing on his ineffective-assistance-of-counsel claims. We granted him a certificate of appealability as to one issue: Whether the district court abused

its discretion by concluding the claims in Campbell's motion to amend did not relate back to his original § 2255 motion.

## II.    **Standard of Review**

We review the denial of a motion to amend a § 2255 motion for abuse of discretion. *Farris v. United States*, 333 F.3d 1211, 1214 (11th Cir. 2003). "An abuse of discretion occurs when a district court commits a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017). By denying a motion for leave to amend, a district court does not abuse its discretion if the proposed amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

## III.    **Analysis**

On appeal, Campbell argues the district court abused its discretion by concluding that his proposed amendment did not relate back to his original § 2255 motion. According to Campbell, the district court's order ignored the portion of his original motion setting forth a "common core of operative facts" uniting his original motion and his proposed amendment—namely, trial counsel's failure to introduce evidence purportedly showing that significant amounts of money went to the universities and to paying legitimate business expenses. Appellant's Br. at 22–23. And it is true that a district court may abuse its discretion when it "ignores or misunderstands" relevant facts. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 61 (11th Cir. 2013) (internal quotation marks

omitted). But even if we assume Campbell is correct and his proposed amendment did relate back to his original motion, the proposed amendment is futile: it fails to state a claim for relief cognizable under 28 U.S.C. § 2255. We therefore affirm. *See Hall*, 67 F.3d at 1263.

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255(a). But the statute does not authorize a collateral attack on any sentence. Instead, it permits a "prisoner in custody under sentence of a [federal] court" to attack "the sentence" provided the prisoner "claim[s] the right to be released." *Id*. Focusing on this language, we have explained that "a prisoner who does not request a release from custody but only a reduction in the amount of restitution he was ordered to pay" asks the Court "to take an action that is not authorized by the plain language of the statute." *Blaik v. United States*, 161 F.3d 1341, 1342 (11th Cir. 1998). This is because "[a] reduction in restitution is not a release from custody." *Id*. Accordingly, we held in *Blaik* that a prisoner may not use § 2255 to challenge only his restitution amount. *Id*. at 1343. We have since clarified that even if a prisoner also challenges custodial aspects of his sentence—and thus "claim[s] the right to be released," 28 U.S.C. § 2255(a)—he may not use a § 2255 motion to challenge his restitution amount, *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009).

*Mamone* dooms Campbell's proposed amendment, which sought to attack monetary aspects of his sentence only. On its

face, Campbell's proposed amendment attacked his "respon-sib[ility] to repay . . . through restitution or forfeiture, the $5.9 million." Civ. Doc. 18 at 4.[3] Campbell explained that he was seek-ing the amendment "due to a ruling of the United States Supreme Court in *Honeycutt v. United States*" but nowhere argued that *Hon-eycutt*—a case concerning a drug forfeiture statute—was relevant to calculating loss for purposes of the Sentencing Guidelines. *Id.* at 1. Instead, in the proposed amendment, Campbell stated that "the significance of *Honeycutt*" was that it "prevents the federal gov-ernment from seizing property or entering a monetary judgment against a defendant who never actually received" the proceeds of a crime. *Id.* at 5 (capitalization altered throughout). In ruling on Campbell's motion to amend, the district court determined that "[t]he thrust of Campbell's amendment concerns whether the court should revisit the $5.9 million restitution judgment it or-dered in light of the Supreme Court's decision in *Honeycutt*." Civ. Doc. 27 at 6. It concluded that the amendment did not relate back in part because Campbell's original motion did "not assert any claims about restitution or forfeiture." *Id.* at 9.

Campbell's motion to amend relied on our opinion in *Unit-ed States v. Stein*, 846 F.3d 1135 (11th Cir. 2017). *Stein* involved a challenge to the calculation of loss amount under both the Sen-tencing Guidelines and the Mandatory Victims Restitution Act, 18

---

[3] At oral argument, counsel for Campbell confirmed that his motion to amend (Civ. Doc. 18) is the text of his proposed amendment.

U.S.C. § 3663a. *See Stein*, 846 F.3d at 1151. Even though Campbell discussed *Stein*, he never argued in the proposed amendment that the district court erred in imposing his custodial sentence. And the district court construed the discussion of *Stein* as raising a "forfeiture argument" that *Stein* was "circuit precedent warranting revisiting the restitution order." Civ. Doc. 27 at 6 n.2. That characterization was consistent with the broader context of Campbell's proposed amendment, in which he focused on *Honeycutt*, restitution, and forfeiture while describing *Stein* as *Honeycutt*'s "11th Circuit progeny." Civ. Doc. 18 at 10.

Although the district court relied on its interpretation of Campbell's proposed amendment to conclude that the amendment did not relate back to the original § 2255 motion, in his motion for a certificate of appealability Campbell did not challenge the district court's conclusion that "the subject of his amendment [was] restitution and forfeiture." Civ. Doc. 27 at 7–8. Campbell's motion described his proposed amendment as "in response to" *Honeycutt*'s holding "that criminal forfeiture liability is limited to the amount the defendant actually received." Appellant's Mot. for a Certificate of Appealability at 5. In seeking our review, Campbell maintained that the purpose of his proposed amendment was "to raise a claim of ineffective assistance of counsel related to trial counsel's failures in combatting the amount of restitution owed by Mr. Campbell." *Id.* at 11. He never suggested that he sought to challenge his custodial sentence. He first argued that the district court erred in construing his motion as one raising restitution and forfeiture challenges only in his reply brief.

Under our precedent, this change of heart "come[s] too late." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014). That is because our precedent treats failure to raise an issue in a motion for a certificate of appealability as abandonment. *Jones v. Sec'y, Dep't of Corr.*, 607 F.3d 1346, 1353–54 (11th Cir. 2010). And Campbell sought our review of the district court's determination that an amendment challenging restitution did not relate back to his original § 2255 motion, not the district court's determination that the motion's purpose was to challenge Campbell's noncustodial restitution and forfeiture awards.

Because Campbell did not challenge the district court's determination that his proposed amendment solely concerned "restitution and forfeiture," Civ. Doc. 27 at 8, in his motion for a certificate of appealability, we decline to consider his belated argument to the contrary. Accordingly, we take Campbell's amendment as the district court found it: a challenge to his restitution and forfeiture amounts.

So construed, Campbell's proposed amendment is futile. *See Mamone*, 559 F.3d at 1211. As counsel for Campbell acknowledged at oral argument, under our precedent his challenges to restitution and forfeiture amounts are not cognizable on a § 2255 motion. Thus, even if Campbell's proposed amendment related back within the meaning of Federal Rule of Civil Procedure 15(c), the district court did not abuse its discretion by denying Campbell leave to make a futile amendment to his § 2255 motion. *See Hall*, 67 F.3d at 1263.

## IV.    Conclusion

For the above reasons, we AFFIRM the district court's order denying Campbell leave to amend his § 2255 motion.

**AFFIRMED.**